No. 17,478.

ARZELIA BILORUSKY *v.* ALEXANDER BILORUSKY.

(280 P. [2d] 1113)

Decided March 7, 1955.

Mr. ROBERT E. HOLLAND, Mr. THOMAS K. HUDSON, for plaintiff in error.

Messrs. BAKER, FAIRCHILD, BUCKLES AND KELLY, for defendant in error.

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the Court.

THE parties herein appear in the same order as in the trial court. We will refer to them as wife and husband respectively. The wife commenced a suit for separate maintenance against her husband, and he filed a cross-complaint asking for a divorce. The complaint and cross-

complaint were based on allegations of extreme and repeated acts of cruelty. The jury returned verdicts finding the issues in favor of the husband, and from the decree entered thereon the wife brings the cause here by writ of error.

Two questions are presented in this review, to-wit: The trial court's refusal to admit in evidence a letter and the envelope in which it was contained, being exhibits "A" and "B" submitted by counsel for the wife. The other question is whether the evidence adduced was sufficient to sustain a verdict finding the wife guilty of extreme and repeated acts of cruelty.

The parties were married some ten years prior to the trial of the action. The only witnesses were plaintiff and defendant. In her testimony the wife referred to numerous occasions when she said her husband stayed out all night, and on some occasions he was "gone for a week or two." She further testified that her husband had been out with other women during their marriage; that she found lipstick and other evidence on her husband's clothes. She also testified to acts of physical violence on the part of her husband; nagging and faultfinding. She said she found exhibits "A" and "B" in her husband's briefcase in the back of his automobile at a time when he was not residing with her. The communication was addressed to another woman at a hotel in Tulsa, Oklahoma.

When counsel for the wife asked her if she was acquainted with her husband's handwriting, objection on the part of counsel for the husband was sustained, the trial court stating: "The court on objection of counsel, and for the reasons stated in chambers, and the argument on the law, has ruled that it is not admissible. Counsel for the wife then inquired: "Before the court makes a final ruling, may I refer to the Pierce case?" The court replied: "I said the court will not allow it to be introduced."

When defendant was on the witness stand, his atten-

tion was directed to exhibits "A" and "B", and he was asked:

"Q. You are familiar with that letter, are you not? A. Yes, I am. Q. And you wrote the letter. A. I did. Q. That letter was written . . ." Mr. Shuteran [counsel for husband in the trial court] "Just a moment. That has been ruled on." The Court: "I don't care to have that discussed any more. The court has ruled that letter is not admissible."

The communication referred to was dated 4:45 A.M. February 4, 1954, and contained in an airmail envelope bearing uncancelled airmail special delivery postage stamps, was marked "Special Delivery"; was written on the letterhead of a Denver Hotel where the husband resided while separated from his wife. The salutation was "My Dearest Darling" and referred to the fact that the addressee (admittedly a woman) had left Denver, leaving some of her clothing with the writer, who was anxiously awaiting the next Thursday when the addressee would return to Denver. It also referred to "Our new home" and was filled with protestations of love. While testifying, the husband admitted he had "dates" with other women while he was separated from his wife.

*Pierce v. Pierce*, 97 Colo. 228, 48 P. (2d) 1024 is relied upon to support the court's ruling that this letter was not admissible. In the Pierce case, supra, the letter was written by a third person; it was not shown that it had been received by the addressee, and no reply made thereto. In the instant case the letter was written by the husband according to his own admission.

The letter, written by the husband, was admissible in evidence not only as tending to corroborate the wife's contention that her husband was associating with other women, but also because it tended to show that his reason for absenting himself from the family home was not because of the wife's conduct, but because he had extra marital affairs, at least with the addressee of this communication. The weight and probative effect

of the exhibits was for the determination of the jury. It may well be that had the jury considered these exhibits the triers of the facts would have concluded that the wife's testimony was substantiated by the writings of the husband, and his credibility as a witness was impaired because of his statements therein contained. Thus, the jury might have rendered verdicts in favor of the wife. *Pierce v. Pierce, supra,* is readily distinguishable.

In instruction No. 10 we find the following: "The court further instructs the jury that the obligation of the husband to support the wife and the minor child of the parties is the same whether the wife obtains a decree of separate maintenance or the husband obtains a decree of divorce." This instruction was given and the record does not disclose any objection to the portion thereof which is quoted. Counsel for the wife frankly admit that the inclusion of the "wife" in this instruction was unnoticed. What the trial court told the jury was that if the husband secured a favorable verdict he would still have to support the wife. This is not the law and notwithstanding no objection was made to it, we note the error. In the event of a retrial of the issues in the instant case, this error will be obviated.

Because a new trial must be had, we do not pass upon the sufficiency of the evidence offered by the husband to sustain the burden resting upon him to prove the allegations of his cross-complaint for divorce.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

Mr. Justice Holland not participating.